IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CANADIAN REAL ESTATE HOLDINGS, LP, § § § Plaintiff, § § v. § Civil Action No. 4:21-cv-333-KPJ § KAREN F. NEWTON § REVOCABLE TRUST *et al.*, § § Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Motion to Dismiss (the "Motion") (Dkt. 101) jointly filed by all of the defendants in this action ("Defendants" or the "WGE Residents"). The Motion is fully briefed: Plaintiff Canadian Real Estate Holdings, LP ("Plaintiff" or "CREH") filed a response (Dkt. 103), Defendants filed a reply (Dkt. 104), and Plaintiff filed a sur-reply (Dkt. 105). Upon consideration, the Motion (Dkt. 101) is hereby **DENIED**.

**I.   BACKGROUND**

This case is closely related to a state case that is pending appeal before the Texas Fifth District Court of Appeals. Both cases arise from CREH's purchase of real property located within the Walnut Grove Estates ("WGE") at 8873 County Road 853, McKinney, Texas 75071 (the "Property"). *See* Dkt. 1 at 14–19. CREH contends it intended to develop and operate the Property as assisted living facilities for those with Alzheimer's Disease. *See* Dkt. 1. at 14. Both cases relate to the WGE Residents' opposition to CREH's intended use of the Property. It is necessary to understand the state case pending appeal to understand the basis for the WGE Residents' Motion.

### A. The State Court Action and the First Federal Action

The WGE Residents filed suit against CREH on May 13, 2019, in the 296th District Court of Collin County, Texas (the "State Court Action") by filing an Original Petition, Application for Temporary Restraining Order, and an Application for Temporary and Permanent Injunctive Relief (the "Original Petition"). *See Newton v. Canadian Real Est. Holdings, LP*, No. 296-02588-2019, (296th Dist. Ct., Collin Cnty., Tex. filed May 13, 2019), *appealed*, 05-20-747-cv (Tex. App.—Dallas filed Aug. 18, 2020); *see also Karen F. Newton Revocable Trust v. Canadian Real Est. Holdings, LP*, No. 4:19-cv-429-KPJ (E.D. Tex. filed June 10, 2019) (the "First Federal Action").[1] The Original Petition alleged CREH's intended use of the Property was "wrongful, intentional, and in clear and direct violation of the Restrictive Covenants" applicable to the Property. *See* First Fed. Action Dkt. 3 at 8. The WGE Residents alleged CREH intended to "raz[e] the improvements" on the Property and "construct[ ] in its place an assisted living facility" in violation of the following restrictive covenants:

> 4. All lots shall be used for single family residential purposes. No commercial nor industrial operations will be permitted.
> \*\*\*
> 9. No lot shall be kept or maintained in a manner or condition detrimental to the rest of the development. No noxious of [sic] offensive activity shall be carried on upon any lot, nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

*See id.* at 7. As a result, the WGE Residents sought temporary and permanent injunctive relief, a declaratory judgment that CREH's intended use of the Property violated the restrictive covenants

---

[1] The Court takes judicial notice of the state court's docket and its own docket in cause no. 4:19-cv-429 pursuant to Federal Rule of Evidence 201. FED. R. EVID. 201; *see Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (per curiam) (stating a district court may take judicial notice of a state court's docket); *Polnac v. City of Sulphur Springs*, No. 4:20-cv-666, 2021 WL 3663539, at \*7 (E.D. Tex. Aug. 18, 2021) (mem. op.) (quoting *Duncan v. Heinrich*, 591 B.R. 652, 655 n.2 (M.D. La. 2018)) ("Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice.").

identified in the Original Petition and that such restrictive covenants were valid and enforceable, and attorneys' fees and court costs. *See id.* at 11–12.

The state court granted the Application for Temporary Restraining Order and, effective May 14, 2019, temporarily enjoined CREH from "constructing on [the Property] any assisted living facility or any improvements other than a single family residence of a size not less than 1,200 square feet from the date of entry of this Order until and to the 14th day after entry or until further order of this Court." *See* First Fed. Action, Dkt. 1-2 at 46–47. The state court set the Application for Temporary Injunctive relief to be heard on May 28, 2019, at 9:00 a.m. (the "Temporary Injunction Hearing"). *See id.* at 47.

On May 28, 2019, at 1:32 a.m., CREH filed an Anti-Slapp Motion to Dismiss pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code (the "Anti-Slapp Motion").[2] *See id.* at 48–145. In the Anti-Slapp Motion, CREH argued the WGE Residents filed the State Court Action "relating to, or in response to [CREH's] exercise of the rights of free speech, association, and to petition." *See id.* at 49. CREH raised illegality, waiver, laches, estoppel, and desuetude as affirmative defenses to the WGE Residents' claims. *See id.* at 61–65. Relevant here, CREH argued the claims asserted in the State Court Action were "barred by illegality" under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, because the WGE Residents refused to accommodate CREH's intent to commercially house disabled individuals but provided reasonable accommodations for the commercial use of "neighboring properties encumbered by the same restrictive covenant[s]." *See id.* at 63. After the Anti-Slapp Motion was filed, the state court reset the Temporary Injunction

---

[2] The Texas Citizens Participation Act ("TCPA"), codified in Chapter 27 of the Civil Practice and Remedies Code, balances an individual's constitutional rights to "petition, speak freely, associate freely and otherwise participate in government" with the right of others to "file meritorious lawsuits for demonstrable injury." *See* TEX. CIV. PRAC. & REM. CODE § 27.002. The TCPA provides a three-step, burden-shifting process for the dismissal of legal actions pertaining to a defendant's rights to freely speak, associate, and/or participate in government. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a); *Montelongo v. Abrea*, 622 S.W.3d 290, 295–96 (Tex. 2021) (citing *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018)).

Hearing for June 11, 2019, at 9:00 a.m., and extended the temporary restraining order through that date. *See id.* at 146–48.

On June 10, 2019—the day before the Temporary Injunction Hearing was scheduled to proceed—the parties filed multiple documents. CREH filed an additional motion to dismiss, arguing the WGE Residents failed to establish standing and, alternatively, failed to state a claim for relief; CREH also filed a general denial and raised several affirmative defenses (including illegality). *See id.* at 167–69. The WGE Residents filed an Amended Petition, *see* First Fed. Action Dkt. 4, and a response to the Anti-Slapp Motion. *See* First Fed. Action Dkt. 1-2 at 194–200. And, finally, CREH filed a Notice of Removal, which brought the State Court Action before this Court as the First Federal Action. *See* First Fed. Action Dkt. 1.

Upon removal, CREH re-urged its Anti-Slapp Motion, which the parties fully briefed. *See* First Fed. Action Dkts. 9, 13, 14. The WGE Residents also filed a Motion to Remand, which the parties fully briefed. *See* First Fed. Action Dkts. 10, 15, 19, 20. Before the Court ruled on the Motion to Remand, CREH filed a Notice of Mooted Issues, wherein it represented:

> 1.    [CREH] no longer has any intention of developing the Property at issue, much less operating living facilities on the Property in the way [the WGE Residents] are trying to stop.
> 2.    [The WGE Residents'] claims for both injunctive and declaratory relief are particularly moot since there is no present or immediate injury in this Case. [The WGE Residents'] own litigation conduct reveals that there is no need for injunctive relief. After [the WGE Residents] obtained an *ex parte* temporary restraining order in State Court—which expired on June 10, 2019—[the WGE Residents] have not re-urged or otherwise attempted to set a hearing on their claim for injunctive relief. Given [CREH's] representation that the plans used as the basis for [the WGE Residents'] suit are no longer [CREH's] plans, [the WGE Residents'] request for Declaratory judgment must also be dismissed as moot.
> 3.    The Federal Declaratory Judgment Act does not provide for an award of attorney's fees. Because the Texas Declaratory Judgment Act does not apply here, there is no question to be determined over whether either party is entitled to attorney's fees under the Texas Declaratory Judgment Act. Neither party may recover attorney's fees under the Texas Declaratory Judgment Act.

> 4. On May 14, 2019, [CREH] paid cash in lieu of bond to satisfy the Bond requirement in the TRO. [CREH] waives any claim on the TRO bond. Therefore, the Court may order that the Cash paid in lieu of bond be returned to [the WGE Residents].
> 5. Because the proper vehicle for disposing of this Case is by dismissal for lack of jurisdiction and not remand, the only issue remaining is the determination of court costs. . . .
> 6. Because there is no longer an actual case or controversy—a constitutional prerequisite to the Court's jurisdiction—the Court should dismiss this Case for lack of subject matter jurisdiction, retaining jurisdiction solely for purposes of determining costs.

*See* First Fed. Action Dkt. 16 at 2–5 (internal headings and citations omitted). On December 11, 2019, the Court remanded the First Federal Action. *See* First Fed. Action Dkt. 27. On remand, CREH filed a Plea to the Jurisdiction, wherein it represented that the state court lacked subject-matter jurisdiction because: (1) CREH's decision to forego development on the Property mooted the WGE Residents' claims in the State Court Action and, alternatively, caused their claims to be unripe; and (2) the WGE Residents failed to establish standing to sue. *See* Dkt. 1 at 18–19; Dkt. 101-2. The WGE Residents' claims for injunctive and declaratory relief were dismissed as moot; however, the WGE Residents' prayer for attorneys' fees survived and proceeded to trial. *See* Dkt. 1 at 18–19. The WGE Residents were awarded $45,529.13 in attorneys' fees plus conditional appellate fees; CREH appealed the attorney fee award. *See id.* at 19. The appeal remains pending. *See Canadian Real Est. Holdings, LP v. Karen F. Newton Revocable Trust*, No. 05-20-747-cv (Tex. App.—Dallas filed Aug. 18, 2020).

**B. This Action**

CREH initiated this action on April 27, 2021. *See* Dkt. 1. CREH's Original Complaint alleges that "[the WGE Residents'] discrimination against the handicapped by enforcement of restrictive covenants and failing to make a reasonable accommodation violates 42 U.S.C. § 3604." *See id.* at 19. CREH seeks to recover, in part, damages related to the State Court Action and First

5

Federal Action; specifically, "[d]amages to make [CREH] whole, including engineering fees, holding costs, and attorney's fees expended in the underlying litigation brought by [the WGE Residents]." *See id.* at 20.

## II.   ANALYSIS

In the Motion, the WGE Residents argue CREH's claims should be dismissed for two reasons. The WGE Residents first argue CREH fails to establish standing, as required to maintain a claim in federal court. *See* Dkt. 101 at 14–17. Alternatively, the WGE Residents argue CREH should be judicially estopped from maintaining this action. *See id.* at 17–24. CREH refutes the WGE Residents' arguments and also argues the Motion is untimely and should not be considered with respect to certain WGE Residents. *See generally* Dkt. 103. CREH asks the Court to deny the Motion as untimely filed with respect to those WGE Residents. *See id.* at 2–3. The Court finds the Motion is without merit and should, therefore, be denied on the merits. *Cf. Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010) (noting the general preference of the Federal Rules of Civil Procedure to resolve disputes on their merits). Because the Motion is without merit, the Court does not address CREH's argument that the Motion was untimely filed as to certain WGE Residents.

### A. Standing

Constitutional standing, also known as Article III standing, is an essential element of subject-matter jurisdiction and must be established to maintain a claim in federal court. *See Bank of Am. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017) (a party establishes the existence of a case or controversy by demonstrating constitutional standing); *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 173 (5th Cir. 2018) (a federal district court can only exercise subject-matter jurisdiction over a case or controversy). To establish standing at the pleading stage, the plaintiff must clearly

allege facts to demonstrate the following elements: (1) the plaintiff suffered an injury-in-fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). Here, the WGE Residents challenge the second element, arguing CREH's alleged injury is not traceable to the WGE Residents because the injury arose from CREH's failure to obtain the required permits from Collin County and because Collin County, alone, is responsible for issuing such permits. *See* Dkt. 101 at 16. The WGE Residents' argument fails.

Traceability "requires something more than conjecture but less than certainty." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 368 (5th Cir. 2020) (internal parentheticals omitted). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). "[A]lthough the causal connection 'cannot be too speculative, or rely on conjecture about the behavior of other parties, [it] need not be so airtight . . . as to demonstrate that [the plaintiff] would succeed on the merits.'" *AHF Comm. Dev., LLC v. City of Dallas*, 633 F. Supp. 2d 287, 295 (N.D. Tex. 2009) (quoting *Coal. for a Sustainable Delta v. Carlson*, 2008 WL 2899725, at *5 (E.D. Cal. July 24, 2008)). Hence, a plaintiff can satisfy its burden at the pleading stage by pleading facts showing the defendant's actions caused or contributed to the plaintiff's injury. *See, e.g., id.* at 291, 295 (finding the plaintiff's injury was fairly traceable to the defendant's actions based on allegations that the defendant's actions influenced the decisions of third parties, which, in turn, caused the plaintiff's injury).

In this case, CREH alleges the WGE Residents, at least in part, contributed to Collin County's refusal to issue the required permits. *See generally* Dkt. 1. Specifically, CREH alleges the WGE Residents "turned to local prejudice and intimidation to stop [CREH] from operating the Property in a way that provided housing opportunity to persons disabled by Alzheimer's disease." *See id.* at 17. According to CREH, the WGE Residents, through counsel, took two actions on May 13, 2019. First, CREH alleges the WGE Residents filed the State Court Action, which resulted in the temporary restraining order entered on May 14, 2019. *See id.* at 15. Second, the WGE Residents drafted a letter to the fire marshal and county engineer. *See id.* at 17–18. Two days later, on May 15, 2019, "the Assistant Director for Collin County Engineering e-mailed [CREH's] engineer that [CREH's] 'permit will be on hold pending Drainage, OSSF and Fire Code unresolved issues.'" *See id.* at 18. CREH contends that, as of July 22, 2019, "Collin County was still refusing to permit [CREH's] proposed building plan." *See id.* As alleged by CREH, Collin County's refusal to issue the permits was not independent from the WGE Residents' actions.

Because CREH has alleged facts showing that the WGE Residents' actions influenced or contributed to Collin County's refusal to issue the permits, the Court finds CREH has met its burden, at the pleading stage, to establish constitutional standing. *See Lujan*, 504 U.S. at 561 (general allegations of injury resulting from the defendant's conduct are sufficient at the pleading stage); *DeOtte v. Azar*, 332 F.R.D. 173, 180–81 (N.D. Tex. 2019) (noting the actions of a third-party negate traceability if the third party acted independently, the third party's actions were necessary to inflict the injury, and it was uncertain whether the third party would take the required actions); *AHF Comm. Dev., LLC*, 633 F. Supp. 2d at 291, 295 (finding the plaintiff established standing by pleading facts showing the defendant's actions influenced the decisions of third-

parties, which caused the plaintiff's injury). Accordingly, the WGE Residents' Motion, as it relates to standing, is denied.

### B. Judicial Estoppel

"Judicial estoppel is an equitable doctrine, invoked at the court's discretion, to 'protect the integrity of the judicial process.'" *Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 558 (5th Cir. 2018) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Judicial estoppel prevents litigants from abusing the judicial system by "prevent[ing] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire*, 532 U.S. at 749 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)); *accord In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) ("The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." (cleaned up) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988))). A court can invoke judicial estoppel, in its discretion, to preclude a party from asserting a legal position if three elements exist: (1) a party has asserted a legal position that is "plainly inconsistent" with a prior position asserted by the party; (2) the prior position was accepted by a court; and (3) the party did not act inadvertently. *Firefighters' Ret. Sys.*, 898 F.3d at 558–59 (quoting *In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013)).

The WGE Residents argue CREH should be judicially estopped from prosecuting its claims under the FHA because CREH, in the State Court Action and First Federal Action, represented to this Court and to the state court that the WGE Residents' claims for injunctive and declaratory relief were moot. *See* Dkt. 101 at 21–24. According to the WGE Residents, because this case involves "the exact same facts and parties" as the State Court Action and First Federal Action,

CREH should be precluded from proceeding in this case. *See id.* at 20–21. However, the WGE Residents have not identified representations made in the State Court Action or the First Federal Action that are plainly inconsistent with CREH's position in this case. As such, the Court declines to invoke judicial estoppel.

The State Court Action and First Federal Action presented two issues: (1) whether CREH should be enjoined from developing the Property for commercial use pursuant to certain restrictive covenants; and (2) whether such restrictive covenants were valid and enforceable. *See generally* First Fed. Action Dkts. 3, 4. In response, CREH argued—but did not raise as a counterclaim—that the WGE Residents were enforcing such restrictive covenants in violation of the FHA. *See* First Fed. Action Dkt. 1-2 at 63, 167–69; First Fed. Action Dkt. 9. As noted by the WGE Residents, CREH filed the Notice of Mooted Issues in the First Federal Action. *See* First Fed. Action Dkt. 16. However, the Notice of Mooted Issues was not all-encompassing and, instead, represented that "certain issues" in the First Federal Action were moot. *See id.* As set forth therein, CREH represented the WGE Residents' claims for injunctive and declaratory relief were mooted by CREH's decision to forego commercial development on the Property. *See id.* at 2–3. CREH further represented there were no issues regarding attorney's fees, specifically under the Federal Declaratory Judgment Act or the Texas Declaratory Judgment Act, and that no issues remained on the allocation of bond paid in the State Court Action. *See id.* at 3. Importantly, CREH did not make any representation pertaining to its defense of illegality raised under the FHA. *See generally id.*

After remand, CREH filed a Plea to the Jurisdiction, wherein it represented, in relevant part, that the WGE Residents' claims in the State Court Action were mooted by CREH's decision to forego its plans to commercially develop the Property. *See* Dkt. 101-2. Like the Notice of

Mooted Issues, the Plea to the Jurisdiction was silent as to CREH's defense of illegality under the FHA. *See id.*

In this case, unlike in the State Court Action and First Federal Action, CREH seeks only to recover for alleged violations of the FHA; CREH does not challenge the validity of the restrictive covenants that were at issue in the State Court Action and First Federal Action or the propriety of injunctive relief to enforce such restrictive covenants. While the issues in this case are certainly related to those previously raised and ultimately dismissed in the State Court Action, they are not the same. And, because the Notice of Mooted Issues and Plea to the Jurisdiction did not address CREH's defense of illegality brought under the FHA, the representations made therein had no bearing on CREH's defense of illegality and, therefore, are not plainly inconsistent with CREH's position in this case that the WGE Residents' actions violated the FHA. Accordingly, the Court declines to invoke judicial estoppel. *See Firefighters' Ret. Sys.*, 898 F.3d at 559 (refusing to invoke judicial estoppel, in part, because the movant failed to show the two positions taken by the non-movant were "inconsistent . . . much less plainly inconsistent"); *Apex Global Partners, Inc. v. Kaye/Bassman Int'l Corp.*, No. 3:09-cv-637, 2009 WL 2777869, at *2 (N.D. Tex. Aug. 31, 2009) (mem. op.) (refusing to invoke judicial estoppel based on positions that were alternative positions, not inconsistent positions). Hence, the WGE Residents' Motion, as it relates to judicial estoppel, is denied.

### III.   CONCLUSION AND ORDER

For the reasons set forth herein, the Motion (Dkt. 101) is **DENIED.**

**So ORDERED and SIGNED this 30th day of March, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE